# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHIGAN RESTAURANT & LODGING
ASSOCIATION; HEIRLOOM
HOSPITALITY GROUP, LLC; H.I.H. INC.
d/b/a SUBURBAN INNS,

        Plaintiffs,

vs.

ROBERT GORDON, in his official capacity as
Director of the Michigan Department of Health
and Human Services,

        Defendant.

_____

Case No. 1:20-cv-01104-JTN-RSK

Hon. Janet T. Neff

**MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

**\*\*ORAL ARGUMENT REQUESTED\*\***

**\* \* \* EXPEDITED CONSIDERATION REQUESTED \* \* \***

## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, The Michigan Restaurant &

Lodging Association ("MRLA"), Heirloom Hospitality Group LLC ("Heirloom"), and H.I.H. Inc.

d/b/a Suburban Inns ("Suburban Inns") (collectively, "Plaintiffs"), move this Court for entry a

Temporary Restraining Order and Preliminary Injunction.[1]  Specifically, Plaintiffs seek an order

immediately enjoining Defendant from either directly or indirectly:

> Enforcing against the Plaintiffs the November 15 Emergency Order issued by
>
> Robert Gordon, the Director of the Michigan Department of Health and Human
>
> Services ("MDHHS")

The basis for this motion is set forth in the attached memorandum in support, and in the

Amended Complaint.  In summary: (1) Plaintiffs are likely to succeed on the merits of their

---

[1] Proposed Order attached as Exhibit A.

claims that the November 15 Order is unconstitutional; (2) Plaintiff is currently suffering irreparable harm and will continue to do so if Defendant is permitted to continue to enforce the November 15 Order; (3) Plaintiffs will suffer greater injury from the Court's denial of emergency relief than Defendant will suffer from the Court's granting of such relief; and (4) The granting of this temporary restraining order will further the public interest.

Expedited consideration of this motion is necessary because the relief requested may well be rendered moot before the motion is briefed under the usual briefing schedule. *See* W.D. Mich. LCivR 7.1(e). Defendant's November 15 Order currently prohibits the vast majority of Plaintiffs' business activities. If the motion is briefed and heard in accordance with the ordinary briefing schedule, these Plaintiffs may be forced to permanently close their operations which have already been shut down for at least 69 days and in many cases 86 days since March 15, 2020, thereby suffering continuous, ongoing, irreparable harm that a court will be unable to remedy in a hearing on the merits absent swift injunctive relief now.

In compliance with W.D. L.R. 7.1(d), Plaintiffs sought concurrence with the relief requested herein by sending a detailed email correspondence to all defense counsel of record, explaining the legal basis of this motion and the relief sought, on November 18, 2020. To date, Defendants' counsel have not responded.

Respectfully submitted,

Dated: November 18, 2020

    */s/Kenneth T. Brooks*
Kenneth T. Brooks (P33834)
Peter B. Ruddell (P63253)
Kelli M. Mulder (P84441) (*admission pending*)
Honigman LLP
*Attorneys for Plaintiffs*

222 N. Washington Sq., Suite 400
Lansing, MI 48933
(517) 377-0735; kbrooks@honigman.com

2

# Exhibit A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MICHIGAN RESTAURANT &
LODGING ASSOCIATION; HEIRLOOM          Case No. 1:20-cv-01104-JTN-RSK
HOSPITALITY GROUP, LLC; H.I.H.
INC. d/b/a SUBURBAN INNS,               Hon. Janet T. Neff

        Plaintiffs,

vs.

                                       **ORDER**

ROBERT GORDON, in his official
capacity as Director of the Michigan
Department of Health and Human Services,

        Defendant.
_____

**ORDER GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING**
**ORDER AND PRELIMINARY INJUNCTION**

Having considered Plaintiffs' First Amended Verified Complaint for Declaratory and

Injunctive Relief, Motion for Temporary Restraining Order and Preliminary Injunction, and

Brief in Support, the Court has determined the following:

1.        Plaintiffs have a likelihood of success on the merits of their claims that the

November 15 Emergency Order issued by Defendant Robert Gordon, the Director of the

Michigan Department of Health and Human Services ("MDHHS") is unconstitutional.

2.        Plaintiff is currently and will continue to suffer irreparable harm if Defendant is

permitted to continue to enforce the November 15 Emergency Order.

3.        Plaintiffs will suffer greater injury from the denial of temporary injunctive relief

than Defendant will suffer from granting such relief.

4.        The granting of this temporary restraining order will further the public interest.

Accordingly,

**IT IS HEREBY ORDERED:**

1.      Defendant is temporarily enjoined from either directly or indirectly enforcing against the Plaintiffs the November 15 Emergency Order;

2.      A hearing shall be set on Plaintiff's Motion for Preliminary Injunction at the earliest possible time.


Dated: November __, 2020                    _____

                                            Hon. Janet T. Neff

36982826.1

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

MICHIGAN RESTAURANT &
LODGING ASSOCIATION; HEIRLOOM
HOSPITALITY GROUP, LLC; H.I.H.
INC. d/b/a SUBURBAN INNS,

        Plaintiffs,

vs.

ROBERT GORDON, in his official
capacity as Director of the Michigan
Department of Health and Human Services,

        Defendant.

_____

Case No. 1:20-cv-01104-JTN-RSK

Hon. Janet T. Neff

**PLAINTIFFS' BRIEF IN SUPPORT OF
MOTION FOR TEMPORARY
RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**

  **\*\*ORAL ARGUMENT REQUESTED\*\***

*Attorneys for Plaintiffs*
Kenneth T. Brooks (P33834)
Peter B. Ruddell (P63253)
Kelli M. Mulder (P84441) (*admission pending*)
Honigman LLP
222 N. Washington Sq., Suite 400
Lansing, MI  48933
(517) 377-0735; kbrooks@honigman.com
(517) 377-0711; pruddell@honigman.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   STATEMENT OF FACTS .................................................................................4

    A.    Director Gordon's November 15 Order is the Executive Branch's
           Attempted End-Run Around the Michigan Supreme Court's Ruling.....................4

    B.    Director Gordon's November 15 Order Is Devastating to Plaintiffs'
           Businesses .......................................................................................................7

    C.    The Director's November 15 Order is Arbitrary .....................................................8

    D.    The Director's November 15 Order As Applied to Restaurants is Not
           Rationally Related to Controlling the Spread of COVID-19 .................................9

III.  ARGUMENT ....................................................................................................10

    A.    Plaintiffs are Likely to Succeed on the Merits of Their Claims ...........................10

    B.    The Plaintiffs Are Suffering Irreparable Harm ....................................................23

    C.    The Public Interest and the Balance of Equities Favor Preliminary
           Injunctive Relief .............................................................................................24

IV.   CONCLUSION .................................................................................................25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992). ........................................ 24

*Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564; 92 S. Ct. 2701; 33 L. Ed. 2d 548
    1972) ......................................................................................................................... 12

*Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ............................... 13

*Bell v. Burson*, 402 U.S. 535; 91 S. Ct. 1586; 29 L. Ed. 2d 90 (1971) ....................... 11

*Brandeis Machinery & Supply Corp. and State Equipment Co. v. Barber-Geene Co.*, 503
    F.2d 503 (6th Cir. 1974) ......................................................................................... 11

*Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. 383 (1994)................. 17, 18

*Cavel Int'l, Inc v Madigan*, 500 F.3d 551 (7th Cir. 2007) ........................................... 19

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535 (6th Cir.
    2007). ....................................................................................................................... 24

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432; 105 S. Ct. 3249; 87 L. Ed. 2d
    313 (1985) ................................................................................................................ 13

*Comptroller of the Treasury v Wynne*, 575 U.S. 542 (2015) ........................................ 18

*CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987) ......................................... 17

*CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987) .................................. 19

*Department of Revenue of Ky. v. Davis*, 553 U.S. 328 (2008) .................................... 18

*FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) ........... 15

*G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir. 1994)................ 25

*Granholm v. Heald*, 544 U.S. 460 (2005)..................................................................... 18

*Huish Detergents, Inc. v Warren Co.*, 214 F.3d 707 (6th Cir. 2000)...................... 17, 18

*In re Certified Questions From U.S. Dist. Court, W. Dist. Of Mich., S. Div.*, No. 161492,
    2020 WL 5877599 (Mich. Oct. 2, 2020) ....................................................... passim

*Jacobson v. Massachusetts*, 197 U.S. 11; 25 S. Ct. 358; 49 L. Ed. 643 (1905) ........... 11

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144; 83 S. Ct. 554; 9 L. Ed. 2d 644 (1963) ............... 11

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 1:20-CV-458, 2020 WL 3421229 (W.D. Mich. June 19, 2020). ......................................................... 1, 14, 15

*League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 20-1581, 2020 WL 3468281 (6th Cir. June 24, 2020) .............................................................. 14, 16

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992)........ 20

*Mathews v. Eldridge*, 424 U.S. 319; 96 S. Ct. 893; 47 L. Ed. 2d 18 (1976) ................................ 12

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ................................................................................ 12

*Mich. Bell Telephone Co. v. Engler*, 257 F.3d 587 (6th Cir. 2001)............................................ 24

*Performance Unlimited, Inc. v. Questar Publishers Inc.*, 52 F.3d 1373 (6th Cir. 1995)............... 24

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 25 L. Ed. 2d 174, 90 S. Ct. 844 (1970) .............. 17, 18

*Robinson v. Attorney Gen.*, 957 F.3d 1171 (11th Cir. 2020) ...................................................... 11

*Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124 (2d Circ. 1984)........................................................................................... 24

*Roth v. Bank of Commonwealth*, 583 F.2d 527 (6th Cir. 1978).................................................. 10

*Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761 (1945)........................................ 19

*United States Dept. of Agriculture* v. *Moreno*, 413 U.S. 528 (1973) .......................................... 13

*Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) ........................................................................... 10

*Wisconsin Legislature v. Palm,* 2020AP765-OA (Wis. May 13, 2020) ....................................... 23

*Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006)........................................... 12

*Zinerman v. Burch*, 494 U.S. 113; 110 S. Ct. 975; 108 L. Ed. 2d 100 (1990) ............................ 12

## Statutes

MCL 10.31 .................................................................................................................... 4

MCL 30.401 .................................................................................................................. 4

MCL 333.2253 .............................................................................................. 6, 21, 22, 23

## Constitutional Provisions

Mich. Const. (1963) art. III, Section 2 ......................................................................... 20

U.S. Const. Amend. XIV, § 1 ................................................................................ 11, 13

# I. INTRODUCTION

The COVID-19 pandemic "needs no introduction."[1]  It arrived in Michigan in March 2020, and in response, Governor Gretchen Whitmer – initially with the support of the state legislature – acted swiftly in declaring a state of emergency.  Since then, Governor Whitmer has issued nearly two hundred executive orders that, in the name of protecting public health and safety, shutdown or materially restricted private business activities, especially the freedom of restaurants and bars to serve food and beverages inside.

The Michigan Supreme Court has since held the majority of the Governor's orders unconstitutional under the Michigan Constitution.  *In re Certified Questions From U.S. Dist. Court, W. Dist. Of Mich., S. Div.*, No. 161492, 2020 WL 5877599, at *15 (Mich. Oct. 2, 2020). In its decision, the Court unanimously held that Governor Whitmer did not have authority to issue the majority of her "sweeping" Executive Orders.  *Id.* At the same time, the Court explicitly indicated that going forward "the Governor and Legislature" should "work together to address this challenge." *Id.* at *3 n.1.

However, the Governor has not worked with the Legislature to address the continuing challenge of COVID-19.  Instead, the Governor has turned to the Michigan Department of Health and Human Services ("MDHHS") and its Director, Robert Gordon ("Director Gordon" or "Defendant"), to circumvent the Michigan Supreme Court's suggestion and has directed MDHHS to issue a series of Emergency Orders that were unconstitutionally issued and impermissibly infringed on Plaintiffs' rights under the Michigan and United States Constitutions. While Plaintiffs do not disagree with the need to protect public health, Director Gordon's most recent action, the "Emergency Order under MCL 333.2253 – Gatherings and Face Mask Order"

---

[1] *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 1:20-CV-458, 2020 WL 3421229, at *1 (W.D. Mich. June 19, 2020).

issued on November 15, 2020 ("November 15 Order" or "Order," attached here as Exhibit 1), which closes establishments for indoor food and beverage consumption, does not accomplish that goal as applied to Plaintiffs.

As with the Governor's unconstitutional Emergency Orders, the ostensible purpose of the November 15 Order is to prevent person-to-person contact and the spread of COVID-19. But experience illustrates that the threat or likelihood of such contact and spread does not depend on the particular business activity or whether a business is deemed by the government to be essential or non-essential. Rather, that threat depends on the protective health and safety practices implemented and adhered to by operating businesses.

Plaintiffs are materially affected by the November 15 Order. Under threat of criminal penalties, the Order, in violation of their constitutional rights, forces them to close or materially restrict their business activities. At the same time, the November 15 Order permits numerous indoor "non-essential" business activities to continue, provided those business owners adhere to health and safety guidance, principally from the United States Center for Disease Control and Prevention (the "CDC") and from MDHHS. Inexplicably, restaurants and bars are not given that option under the November 15 Order, even though they have continuously and unequivocally demonstrated for several months of operation during the pandemic that they can do so safely. Plaintiffs have been and remain fully capable of and committed to adhering to strict health and safety guidance, including that in prior MDHHS orders, and have so notified Defendant.

Director Gordon issued the November 15 Order notwithstanding the fact that Plaintiffs have shown themselves highly cooperative in following the comprehensive protocols that have been in place for several months, and there is no reason in-person dining should be entirely prohibited now, especially while the November 15 Order permits other businesses to have

clientele indoors and on premises. For example, under the November 15 Order, it is legal to get a tattoo or haircut but not to eat a meal indoors at a restaurant.

While restaurants could rely on federal dollars and utilize outdoor seating during the comparatively mild weather of the first shutdown, those federal dollars are gone and the weather in Michigan in November and December will make offering outdoor seating options physically and economically impossible. Director Gordon's decision to effectively shutter restaurants for a second time this year – this time with no safety net of federal stimulus dollars to soften the blow to already ailing operators and employees – will absolutely lead to a catastrophic economic fallout. Plainly, based on MDHHS's own transmission data, the human toll on restaurant owners, their employees, and the entire food service supply chain will be dramatically worse than what Director Gordon is attempting to mitigate through the November 15 Order. In fact, closing down the restaurant industry in Michigan affects Michigan's broader economy and potentially imperils the ability for basic food supplies to be distributed in the state.

There is nominal if any public health benefit from the November 15 Order as applied to food service establishments. It is indisputable that the indoor consumption of food and beverages can be done safely and at least as safely as indoor salon services and retail shopping. In fact, despite ever-present COVID-19 concerns, indoor consumption of food and beverages at restaurants utilizing proper health and safety guidance is still currently permitted just over the state line, in Indiana and Ohio. As applied to Plaintiffs, the November 15 Order is not rationally related to any public health goals.

As further explained below, Plaintiffs are entitled to a temporary restraining order and preliminary injunctive relief preventing enforcement of the November 15 Order for at least three reasons: (1) the November 15 Order violates Plaintiffs' Fourteenth Amendment rights to due

process and equal protection; (2) the November 15 Order impermissibly burdens interstate commerce; and (3) the November 15 Order violates the Michigan Constitution's non-delegation and separations of powers clauses. Because of the November 15 Order's immediate and ongoing devastating effects on Plaintiffs and many other Michiganders, emergency judicial intervention is necessary to prevent enforcement of the Order and the consequent ongoing violations of Plaintiffs' constitutional rights under the United States and Michigan Constitutions.

## II. STATEMENT OF FACTS

### A. Director Gordon's November 15 Order is the Executive Branch's Attempted End-Run Around the Michigan Supreme Court's Ruling

Plaintiffs are two Michigan companies, the Heirloom Hospitality Group LLC ("Heirloom") and HIH Inc. d/b/a Suburban Inns ("Suburban Inns") and the Michigan Restaurant and Lodging Association ("MRLA").

### 1. Governor Whitmer's Emergency Orders

On March 10, 2020, Governor Whitmer issued Executive Order 2020-04. That order declared a state of emergency related to COVID-19 under section 1 of Article X of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401 *et seq.*, (the "EMA"), and the Emergency Powers of the Governor Act of 1945, MCL 10.31 *et seq.* (the "EPGA"). On April 1, 2020, Governor Whitmer issued Executive Order 2020-33 which expanded on Executive Order 2020-04, and declared both a state of emergency and a state of disaster in Michigan. On April 30, 2020, Governor Whitmer issued Executive Order 2020-67 to continue the emergency declaration under the EPGA, as well as Executive Order 2020-68 to issue *new* emergency and disaster declarations under the EMA. Governor Whitmer also issued Executive Order 2020-21 on March 23, 2020 ordering all people in Michigan to stay home and

stay safe; in subsequent months, the Governor issued dozens more such orders, ostensibly under the authority of the EMA and EPGA (the "Stay Home Orders"). The Michigan Legislature denied an April 2020 request from Governor Whitmer to extend the state of emergency then in place and filed suit challenging Governor Whitmer's authority to issue additional Executive Orders shutting down businesses state-wide when the Governor deemed those businesses non-essential. In spite of this clear messaging from the Legislature, Governor Whitmer went on to issue nearly 200 additional COVID-19-related Executive Orders which at times entirely shut down some non-essential businesses while merely regulating other non-essential businesses.

These Stay Home Orders, which prohibited indoor dining at food service establishments for 68 days in 2020 – from March 16 through May 21 – devastated the restaurant industry as a whole, and Plaintiffs in particular. While some restaurants in the Upper Peninsula and in Northern Michigan were permitted to open on May 22, it would be 17 more days before restaurants statewide could open for indoor dining.

### 2. Director Gordon's Emergency Orders

Months later, after untold damage had been done to the restaurant industry, the Michigan Supreme Court was unanimous and unequivocal in holding that Governor Whitmer's Stay Home Orders issued after April 30, 2020, under the EMA, were unconstitutional. *In re Certified Questions*, 2020 WL 5877599, at *15. Governor Whitmer moved to delay the implementation of the Michigan Supreme Court's ruling on October 5, 2020, but the court denied her motion.

Now, in an effort to make an end-run around the recent, clear suggestion of the Michigan Supreme Court to "work together with the Legislature to address this challenge," *id.* at *3 n.1, the Executive Branch via Director Gordon has unilaterally issued a series of Emergency Orders akin to the Governor's myriad Stay Home Orders. Starting just three days after the Michigan Supreme Court's decision on October 2, and ostensibly pursuant to power delegated to it by the

Legislature under MCL 333.2253, MDHHS has already issued four Emergency Orders. First, MDHHS issued an order on October 5, 2020 restricting gatherings and requiring face covering requirements. Four days later, an order issued on October 9, 2020 repealed and replaced the October 5, 2020 Order and expanded regulations on Michigan businesses and recreational activities. On October 29, 2020, MDHHS issued another order that repealed and replaced the October 9 Order and further expanded regulations and restrictions on Michigan businesses and recreational activities. The current order – the November 15 Order – again shutters restaurants and bars for indoor food and beverage consumption – *for another 21 days.* A violation of the November 15 Order is a misdemeanor, punishable by criminal penalties and civil fines.

While Defendant asserts the November 15 Order "rests on the firm legal authority created by the Michigan Legislature after the Spanish flu," and claims his actions "echo" those taken by Governor Sleeper 100 years ago,[2] even during the pandemic of 1918, Governor Sleeper shut down the state for only 20 days.

Director Gordon purports to have issued the November 15 Order "under MCL 333.2253." The statute states in relevant part:

> (1) If the director determines that control of an epidemic is necessary to protect the public health, the director by emergency order may prohibit the gathering of people for any purpose and may establish procedures to be followed during the epidemic to insure continuation of essential public health services and enforcement of health laws. Emergency procedures shall not be limited to this code.

From this authority – and in defiance of the Michigan Supreme Court's October 2, 2020 decision and order in *In re Certified Questions* – Defendant has developed and unilaterally

---

[2] Robert Gordon, Press Conference, November 15, 2020 ("This order rests on the firm legal authority created by the Michigan legislature after the Spanish flu 100 years ago. Our actions now echo actions then. They're grounded in evidence and experience and reflect input from public health experts in Michigan and around the country.") https://www.rev.com/blog/transcripts/michigan-governor-gretchen-whitmer-covid-19-press-conference-transcript-november-15, last accessed November 17, 2020.

promulgated an entire regulatory scheme that picks and chooses which Michigan businesses may operate indoor services but offers absolutely no scientific basis for doing so. While Plaintiffs' businesses are entirely forbidden from doing business indoors during Michigan's almost always inclement November and December weather, the November 15 Order – with no offered or imaginable rational basis for the distinction – permits indoor retail shopping with a mask, personal care services at salons, spas, and tattoo parlors, and working out at the gym.

**B.      Director Gordon's November 15 Order Is Devastating to Plaintiffs' Businesses**

Under threat of fines and criminal penalties, the November 15 Order materially restricts Plaintiffs' businesses. Plaintiffs have lost the ability to use their real and personal property in any meaningful economically beneficial manner. Plaintiffs' employees have lost their ability to work at their jobs, and to receive their regular pay and health benefits.

The November 15 Order is causing further economic devastation for Plaintiffs' businesses, which have already suffered immeasurably under the Stay Home orders. More than 17,500 eating and drinking places operated in Michigan in 2019. Between March 1 and April 16, 2020, 53% of operators had already temporarily closed their establishments. During the same time period, 88% of those operators laid off or furloughed employees. At the start of 2020 there were over 450,000 restaurant and food service jobs in Michigan representing 10% of the state's employment, but almost 250,000 of those employees had to be laid off or furloughed between March and May 2020. Many of these Michigan businesses have not survived. Approximately 2,000 restaurants have already closed their doors permanently in Michigan in 2020 and if the prohibition on indoor dining is prolonged, 6,000 more restaurants are likely to

permanently close in the coming months. Nationwide, more than 100,000 restaurants – or 1 in 6 restaurants – have closed permanently or long-term because of the pandemic.[3]

Plaintiffs' businesses have already lost hundreds of millions of dollars in business opportunities as a result of the Governor's invalid Executive Orders and now are singled out from other non-essential businesses and suffering additional devastating losses under the November 15 Order. They are also experiencing renewed harm to their reputations and their relationships with employees, vendors, and customers.

Unquestionably, the impact of the November 15 Order is devastating to the entire food industry supply chain (both in- and out-of-state) and to all Michiganders who rely on Plaintiffs' businesses and the restaurant industry for their livelihoods, entertainment, and sustenance. If the November 15 Order is enforced, more than 40% of restaurants are likely to close at least temporarily and 250,000 employees are likely to be laid off from restaurants over the holiday season – and this time with no federal funds and an exhausted Unemployment Insurance Trust Fund.

### C. The Director's November 15 Order is Arbitrary

The November 15 Order permits almost all other businesses except Plaintiffs' to conduct business indoors. People are allowed to patronize recreational marijuana dispensaries, liquor stores, and purchase lotto tickets, but they cannot eat indoors at a restaurant. Michigan residents can get their hair cut, their nails manicured, get a tattoo, and get a massage, even though none of these industries can operate with any kind of meaningful social distancing. In fact, even retail centers are explicitly given a pass from complying with the 30% occupancy limit under the November 15 Order, "if strict adherence to the 30% total occupancy limit would otherwise result

_____

[3] https://www.travelandleisure.com/food-drink/coronavirus-pandemic-restaurant-shutdowns, last accessed November 13, 2020.

8

in closure." And gyms are permitted to operate at 25% of total occupancy limits, in spite of the heavy breathing involved in exercise that was previously used as justification for keeping gyms closed. *See League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer,* No. 20-1581, 2020 WL 3468281, at \*5 (6th Cir. June 24, 2020).

The Director has claimed that the November 15 Order is "grounded in evidence and experience" and that it reflects "input from public health experts in Michigan and around the country."[4] However, the Director offers no explanation for *how* his selective, targeted shutdown of indoor dining at restaurants and bars while leaving so many other businesses open for indoor commerce, is in any way related to stopping the spread of COVID-19. There is no objective data or science or imaginable logic that supports the Director's position on restaurants, nor does experience support the November 15 Order. The capricious, sporadic, and selective regulations in the November 15 Order – regulations that irrationally single out restaurants and bars while permitting other non-essential businesses to offer indoor services – are not based in science and lack any imaginable rational basis. And MDHHS's own data shows that restaurants and bars are not a significant course of COVID-19 outbreaks. In spite of serving millions of Michiganders each day, according to MDHHS, only about 4.4% of outbreaks are attributed to restaurants.

> **D.** **The Director's November 15 Order As Applied to Restaurants is Not Rationally Related to Controlling the Spread of COVID-19**

The timing of Director Gordon's Order is also at cross purposes to the stated purposes of preventing the spread of COVID-19. It is axiomatic that closing restaurants over the

---

[4] Robert Gordon, Press Conference, November 15, 2020 ("This order rests on the firm legal authority created by the Michigan legislature after the Spanish flu 100 years ago. Our actions now echo actions then. They're grounded in evidence and experience and reflect input from public health experts in Michigan and around the country.") https://www.rev.com/blog/transcripts/michigan-governor-gretchen-whitmer-covid-19-press-conference-transcript-november-15 (last accessed November 17, 2020).

Thanksgiving holiday will only *contribute* to increasing the number of unregulated, in-residence gatherings, which do not allow for proper social distancing and have repeatedly proven to be super-spreader events.[5]  The closure of restaurants and bars for indoor consumption of food and beverages while many other businesses remain open for indoor services is not in any conceivable way rationally related to any public health goals.  Ultimately, the arbitrary and capricious November 15 Order has put an entire industry in such financial peril that many restaurants will never recover while the order inexplicably puts no such burden on most other businesses.

## III.    ARGUMENT

### A.    Plaintiffs are Likely to Succeed on the Merits of Their Claims

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). Each of these factors is met here.

To satisfy the first prong of the preliminary-injunction analysis, the Plaintiffs must only demonstrate that the legal issues they raise are substantial enough to constitute "fair ground[s] for litigation and thus [require] more deliberate investigation." *Roth v. Bank of Commonwealth*, 583 F.2d 527, 537 (6th Cir. 1978). "It will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for mere deliberate investigation." *Brandeis Machinery & Supply*

---

[5] *See, e.g.*, "CDC: Teen gave COVID-19 to 11 Relatives Across 4 States, Including Illinois, During a Family Vacation.  Case is a cautionary tale as holidays approach, experts say." (She was one of 14 relatives who shared a five-bedroom, two-bathroom home and did not wear face masks or practice physical distancing). https://www.chicagotribune.com/coronavirus/ct-cdc-report-family-gathering-local-20201012-7f7i6sosi5ep7dhoq3e2bpgavi-story.html , last accessed November 18, 2020.

*Corp. and State Equipment Co. v. Barber-Geene Co*., 503 F.2d 503, 505 (6th Cir. 1974). The

Plaintiffs' claims meet this standard.

> **1.    The November 15 Order Is Unconstitutional Under the Fourteenth Amendment's Due Process and Equal Protection Clauses**

Constitutional rights do not wholly evaporate in times of emergency. *See Jacobson v.*

*Massachusetts*, 197 U.S. 11, 29; 25 S. Ct. 358; 49 L. Ed. 643 (1905).  Indeed, the law has long

been settled that all essential liberties remain protected at all times, even during the gravest of

emergencies. *Bell v. Burson*, 402 U.S. 535, 542; 91 S. Ct. 1586; 29 L. Ed. 2d 90 (1971); *Kennedy*

*v. Mendoza-Martinez*, 372 U.S. 144, 164-65; 83 S. Ct. 554; 9 L. Ed. 2d 644 (1963).

While states may implicate police powers to take swift action necessary to protect public

health and safety, those powers are not limitless, and are subject to judicial review. *See*

*Jacobson*, 197 U.S. at 31, 38-39; *Robinson v. Attorney Gen*., 957 F.3d 1171, 1179 (11th Cir.

2020) (just as constitutional rights have limits, so too does a state's power to issue executive

orders limiting such rights in times of emergency).

Crucially, the Michigan Supreme Court recently underscored these principles in *In re*

*Certified Questions*, holding that Governor Whitmer lacked the authority to declare a "state of

emergency" or a "state of disaster" under the EMA after April 30, 2020 – *notwithstanding that*

*the COVID-19 pandemic is ongoing* – where the Legislature had placed a time-limit on its

delegation of power.  2020 WL 5877599, at *12.

> **a.    The November 15 Order Violated and Continues to Violate Plaintiffs' Due Process Rights Under the Fourteenth Amendment to the United States Constitution**

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides

that no state can "deprive any person of life, liberty, or property, without due process of law."

U.S. Const. Amend. XIV, § 1, cl. 3. Procedural due process imposes constraints on governmental

decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332; 96 S. Ct. 893; 47 L. Ed. 2d 18, 31 (1976). Accordingly, a procedural due process claim requires Plaintiffs to show: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; (2) a deprivation of that interest; (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (citation omitted). A property interest may not be obstructed by a legislative action that is under the guise of protecting the public interest yet is actually "arbitrary or without reasonable relation to some purpose within the competency of the State to effect." *Meyer v. Nebraska*, 262 U.S. 390, 399-400 (1923).

The fundamental requirement of procedural due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. at 319; *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577; 92 S. Ct. 2701; 33 L. Ed. 2d 548 (1972). A due process violation is not established when the deprivation of a constitutionally protected interest occurs; rather, the deprivation occurs when the state fails to provide due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125; 110 S. Ct. 975; 108 L. Ed. 2d 100, 114 (1990) (citation omitted). Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the state provided, and whether it was constitutionally adequate. *Id*. at 126.

In this case, Plaintiffs are established businesses that offered indoor dining prior to the November 15 Order and clearly have a property interest at issue. The November 15 Order has not attempted to provide _any_ procedural due process safeguards. Likewise, no mechanism of any kind exists for post-deprivation review. Thus, this Court cannot even consider whether process was adequate under a *Mathews* three-part balancing test because there is no process available at all. By failing to provide any pre- or post-deprivation review of the November 15 Order

shuttering Plaintiffs' business for indoor consumption of food and/or beverages, Defendant has violated Plaintiffs' procedural due process rights. Plaintiffs are suffering substantial property losses. Accordingly, Plaintiffs are likely to succeed on their procedural due process claim.

> **b.** **The November 15 Order Violated and Continues to Violate Plaintiffs' Equal Protection Rights Under the Fourteenth Amendment to the United States Constitution**

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that no state can "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1, cl. 4. Accordingly, state action that regulates economic activity in a discriminatory manner violates the Equal Protection Clause unless the state can show a "rational relationship between the disparity of treatment," along with some "legitimate governmental purpose." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-67 (2001). Under no circumstances can a state "rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446; 105 S. Ct. 3249; 87 L. Ed. 2d 313, 324 (1985) (citation omitted); *see also United States Dept. of Agriculture* v. *Moreno*, 413 U.S. 528, 535-38 (1973) (holding that the classification at issue was not only 'imprecise,' but was utterly want of any rational basis).

The Supreme Court's decision in *City of Cleburne* exemplifies how such arbitrariness or irrationality may be identified. In *Cleburne*, the Supreme Court struck down a zoning ordinance that required a special use permit for a home for individuals with disabilities ("Featherstone Home"), but did not require the same special use permit "for apartment houses, multiple dwellings, boarding and lodging houses, fraternity or sorority houses, dormitories, apartment hotels, hospitals, sanitariums, nursing homes for convalescents or the aged . . ., private clubs or fraternal orders and other specified uses." *City of Cleburne*, 473 U.S. at 447.

The court acknowledged that, while individuals with intellectual disabilities may have unique needs, such difference is patently irrelevant unless the Featherstone Home and its occupants would threaten legitimate city interests in a way that other permitted uses such as boarding houses, fraternity or sorority houses, etc. would not. *Id.* at 448. The court found that the record did not reveal "any rational basis for believing that the Featherstone Home would pose any special threat to the city's legitimate interests." *Id.*

While responding to a health crisis is a legitimate governmental purpose, such purpose does not justify unfettered state action. While important with respect to *legislative* action, these considerations are all the more crucial with respect to *executive* action. The Sixth Circuit recently considered a relevant situation in *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer*, No. 20-1581, 2020 WL 3468281 (6th Cir. June 24, 2020), and applied a "rational speculation" standard to uphold Governor Whitmer's exercise of her police powers to keep fitness centers closed.[6] However, in spite of the court's guidance, that case is "not quite parallel to the case presented here." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer,* No. 1:20-CV-458, 2020 WL 3421229, at *4 (W.D. Mich. June 19, 2020). With respect to fitness centers, "The idea that heavy breathing and sweating in an enclosed space containing many shared surfaces creates conditions likely to spread the virus," at least facially supported "the Governor's treatment of indoor fitness facilities." *League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer,* No. 20-1581, 2020 WL 3468281, at *5 (6th Cir. June 24, 2020). But no such rationale exists with respect to indoor dining at restaurants and bars, a low-impact activity involving none of the heavy-breathing-and-sweating risks of virus spread; when it comes to

---

[6] Of course, the Stay Home Orders have since been declared unconstitutional on other grounds. *In re Certified Questions From U.S. Dist. Court, W. Dist. Of Mich., S. Div.,* No. 161492, 2020 WL 5877599, at *12, 15 (Mich. Oct. 2, 2020).

indoor dining, no "rational speculation" of the sort the Sixth Circuit found justified keeping fitness centers closed supports a prohibition. *Id.* at \*3. Importantly, *fitness centers remain open under the November 15 Order.*

While the Sixth Circuit does not require a perfect fit between means and ends, they must be in some way related. *Id.* at \*3. Plaintiffs acknowledge that "the standard is extremely deferential here—if the Court can conceive of any set of facts that would support the Orders, it must uphold them and deny the injunction," but "the Orders must still connect the challenged prohibition with *some* fact or facts." *League of Indep. Fitness Facilities & Trainers, Inc.*, 2020 WL 3421229 at \*6. The November 15 Order's restrictions on indoor dining bear no relationship whatsoever to the goal of preventing the spread of COVID-19. There must be some rational relation that distinguishes restaurants from other open businesses – and there is not. *See id.* "Defendants cannot rely on the categorization" of indoor dining as "dangerous, without a single supporting fact, to uphold their continued closure." *Id.* This is especially true when other businesses remain open for indoor commerce. Restaurants and bars "are being treated dissimilarly without any justification for the distinction." *See id.*

Furthermore, in applying the "rational speculation" standard, Sixth Circuit quoted analysis from *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–15, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993), which explains the rationale behind the low bar of rational basis review *only with respect to legislation*: "[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Thus, the absence of 'legislative facts' explaining the distinction 'on the record' has no significance in rational-basis analysis.") (citations omitted). When the Sixth Circuit applied this test for *legislation* to the

Governor's *unilateral executive act*, it found that "[u]nder this test, the Governor's action 'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'" *League of Indep. Fitness Facilities & Trainers, Inc.*, 2020 WL 3468281 at *2 (quoting *Beach Commc'ns, Inc.*, 508 U.S. at 315, 113 S. Ct. 2096.). It is dubious that this low bar "rational speculation" test for *duly enacted legislation that has endured bicameral scrutiny and presentment* should also apply to the *unilateral orders of the executive*. Especially where – as here – the Michigan Supreme Court has already struck down the Stay Home Orders and recommended the Executive Branch and the Legislature work together in order to manage the pandemic. *In re Certified Questions,* No. 161492, 2020 WL 5877599, at *3 & n.1. Rational basis requires more when it comes to reviewing executive acts, especially here where the Governor lacks the authority to issue Emergency Orders.[7]

Even if the "rational speculation" standard that applies to legislation were the appropriate standard to apply to the Court's analysis of the November 15 Order, no rational speculation can explain why restaurants must again be closed for indoor dining. Defendant can't point to the justification previously used with respect to fitness centers, that "working out is sustained vigorous physical activity, which necessarily means heavy breathing and sweating and, therefore, acute, propulsive bursts of virus shedding by anyone in that confined space who might be infected," *id.* at *3, which plainly has no application to indoor dining at restaurants. And again, the November 15 Order permits gyms to provide indoor services. Even under a "rational speculation" standard, the November 15 Order fails the test. Indeed, it is <u>not</u> the type of business

---

[7] Notably, Governor Whitmer herself recently expressed skepticism at President Trump's avoidance of the legislative process via executive order. *See* Governor Whitmer Statement on President Trump's COVID-19 Executive Actions, August 9, 2020: "It's time for the president to do the right thing, stop playing political games, and work with Congress . . . ." https://www.michigan.gov/whitmer/0,9309,7-387-90499_90640-536351--,00.html (last accessed November 18, 2020).

activity that determines safe operation as much as it is the measures taken by the businesses to protect its employees and guests.

No imagined or actual rational basis exists to on the one hand to permit liquor stores, recreational marijuana dispensaries, tattoo parlors, and places that sell lotto tickets, and nail salons to be open, but on the other hand to forbid indoor dining at restaurants and bars. Simply put, the November 15 Order arbitrarily and improperly singles out and deprives Plaintiffs of their rights and freedoms to engage in their business operations, while allowing other similarly situated businesses to operate and denies Plaintiffs equal protection of the laws under the United States Constitution.

2.      **The November 15 Order Impermissibly Burdens Interstate Commerce**

a.      **The Dormant Commerce Clause Prohibits State Interference with Interstate Commerce**

The "dormant" Commerce Clause[8] restricts state regulation of the flow of interstate commerce. *Huish Detergents, Inc. v Warren Co.*, 214 F.3d 707, 712 (6th Cir. 2000) (citing *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987)). A state's regulation of interstate commerce is prohibited under the dormant Commerce Clause if it imposes a burden on interstate commerce that is "clearly excessive in relation to the putative local benefits" even in the absence of discrimination against out-of-state business interests in favor of in-state business interests. *Huish Detergents, Inc. v Warren Co.*, 214 F.3d at 713 (citing *C & A Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. 383, 390 (1994) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 90 S. Ct. 844 (1970)).

---

[8] The Commerce Clause (U.S. Const. Art. I, § 8, cl. 3) states that Congress has the power to regulate commerce among the states. The Supreme Court has interpreted this to restrict states' ability to regulate interstate commerce, and this interpretation has become known as the "dormant" Commerce Clause.

If a state's regulation interferes with interstate commerce in a manner that violates the dormant Commerce Clause, the regulation is invalid whether the challenging Plaintiffs are domiciled in-state or out-of-state. *See Comptroller of the Treasury v Wynne*, 575 U.S. 542 (2015); *Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 336 (2008); *Granholm v. Heald*, 544 U.S. 460, 469 (2005).

> **b.    The November 15 Order Violates the Dormant Commerce Clause**

As detailed in the above Statement of Facts and preceding arguments, as well as in the First Amended Complaint, the November 15 Order places an excessive burden on restaurants and bars and has resulted in a devastating loss of revenue, as well as the permanent closure approximately 2000 restaurants in Michigan and if the November 15 Order is enforced against the food service industry, that number will continue to increase.  The November 15 Order also burdens interstate commerce by burdening the entire food service industry supply chain within and to Michigan.

Though COVID-19 exists across the nation, restaurants are open for indoor dining in the vast majority of states, including Michigan's neighbors Indiana and Ohio.  The November 15 Order impermissibly burdens in-state commerce to the benefit of commerce in neighboring states by forcing Plaintiffs' customers to go out of state for indoor, on-premises dining.

Plaintiffs are likely to succeed on the merits of their dormant Commerce Clause claim because the November 15 Order imposes a clearly excessive burden on restaurants and bars in relation to any possible benefit of their continued closure for indoor dining. *Huish Detergents, Inc. v Warren Co.*, 214 F.3d at 713; *Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. at 390; *Pike v. Bruce Church, Inc.*, 397 U.S. at 142.

Furthermore, and as explained above, there is no rational basis supporting the disparate treatment of restaurants and bars. This is another reason the November 15 Order is invalid. As the Seventh Circuit explains:

> [E]ven in the absence of discrimination, a burden on interstate commerce that had no rational justification would be invalid. An example is the Illinois mudguard law invalidated in *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 79 S. Ct. 962, 3 L. Ed. 2d 1003 (1959). The law required all trucks in the state, thus including those traveling interstate, to be equipped with curved mudguards that the district court had found not only conferred "no" safety benefits over straight ones but actually created "hazards previously unknown." *Id.* at 525. ***The law impeded interstate commerce--though maybe local commerce just as much--and because it lacked a rational basis it was invalid despite the lack of proof of a disparate impact.***

*Cavel Int'l, Inc v Madigan*, 500 F.3d 551, 556 (7th Cir. 2007) (internal citations omitted) (emphasis added). *See also Southern Pacific Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761 (1945); *CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987).

Since Plaintiffs stand ready to provide indoor food and beverage consumption under established health and safety guidelines while respecting social distancing, and have proven their ability to do so, there is nominal or no public benefit to preventing Plaintiffs from providing these services. Conversely, the November 15 Order singles out and incapacitates these businesses, causing job loss, loss of business revenue, and inevitably bankruptcy and permanent closure of valuable Michigan businesses. The November 15 Order also encourages interstate travel to neighboring states where restaurants are open. Encouraging travel during a time of pandemic is at cross purposes to the MDHHS's stated reasons for issuing the November 15 Order.

There can be no serious dispute that the renewed closure of restaurants and bars for indoor dining is excessively burdensome, lacks any rational justification, and violates the

dormant Commerce Clause. Accordingly, Plaintiffs have a high likelihood of success on the merits of Count I of the First Amended Complaint.[9]

### 3. The November 15 Order Is Unconstitutional Under Michigan Law

The Michigan Supreme Court has been absolutely clear in *In re Certified Questions* that the Stay Home Orders issued after April 30, 2020 were unconstitutional. No. 161492, 2020 WL 5877599 (Mich. Oct. 2, 2020). Certainly, the Governor can't avoid the implications of that ruling by directing Director Gordon to issue Emergency Orders instead. The November 15 Order is no different than the preceding Stay Home Orders and is a bald attempt to exert unfettered authority and promulgate a full regulatory scheme – again without reference to the Legislature.

The Separation of Powers Clause in the Michigan Constitution provides, "The powers of government are divided into three branches: legislative, executive, and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Mich. Const. (1963) art. III, Section 2. The legislative power in the State of Michigan is explicitly vested in the Michigan Legislature. *Id.* art. IV, Section 1. Executive lawmaking is unlawful under the Michigan Constitution. Unlawful

---

[9] Plaintiffs also maintain, as alleged in Court IV of their First Amended Complaint, that the November 15 Order effects a regulatory taking, although that is not a basis for the emergency relief requested here. "[W]hen the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 2895, 120 L. Ed. 2d 798 (1992). And "regulations that leave the owner of land without economically beneficial or productive options for its use … carry with them a heightened risk that private property is being pressed into some form of public service under the guise of mitigating serious public harm." *Id.* at 1018. Where a government regulation "declares 'off-limits' all economically productive or beneficial uses of land' that regulation "goes beyond what the relevant background principles would dictate, [and] compensation must be paid to sustain it. *Id.* at 1030.

executive lawmaking includes a delegation of authority to the executive branch that is not sufficiently specific, a failure to establish boundaries, or executive action beyond the Legislature's established boundaries. *See, e.g., In re Certified Questions*, 2020 WL 5877599.

The November 15 Order is unconstitutional under the Michigan Constitution for at least two reasons: (1) MCL 333.2253, much like the EPGA the Michigan Supreme Court struck down in *In re Certified Questions*, is itself an unconstitutional delegation of power from the Legislature to the Executive; (2) Even if MCL 333.2253 were constitutional under *In re Certified Questions* – which it is not – Director Gordon's wide ranging and arbitrary regulatory scheme effectuated in the November 15 Order represents executive action far outside the bounds of MCL 333.2253's sparse statutory language.

The Michigan Supreme Court, while recognizing that Courts must presume a statute is constitutional, concluded that the EPGA violates the Michigan Constitution's non-delegation doctrine. *In re Certified Questions,* No. 161492, 2020 WL 5877599 at *20-21. In doing so, the Court explained that the unconstitutional delegation of legislative power must be "framed in terms of the adequacy of the standards fashioned by the Legislature to channel the agency's or individual's exercise of the delegated power." *Id.* at *23 (internal citations omitted). "The preciseness required of the standards will depend on the complexity of the subject." *Id.* (internal citations omitted). MCL 333.2253, which offers the Director authority only to "prohibit" gatherings but not to create a nuanced regulatory scheme of restrictions, is just the sort of blunt instrument that "leave[s] the people unprotected from uncontrolled, arbitrary power in the hands of administrative officials" that concerned the Michigan Supreme Court and rendered the EPGA unconstitutional. *See id.* The Michigan Supreme Court explained, "the ultimate judgment regarding the constitutionality of a delegation must be made not on the basis of the scope of the

power alone, but on the basis of its scope plus the specificity of the standards governing its exercise. When the scope increases to immense proportions . . . the standards must be correspondingly more precise." *Id.* at *25 (internal citations omitted).

Here, the power the Defendant claims is that to shut down any business in the State of Michigan for as long as the Defendant deems it appropriate; certainly, such great power requires very precise standards to pass constitutional muster. Unquestionably, the statute does not provide such standards. In fact, it provides almost no standard, giving MDHHS only an on-off switch to "prohibit" gatherings, but no other guidance whatsoever and no power to design restrictions that apply to some businesses but not others. Again, the Court in *In re Certified Questions* is instructive: "[I]t is one thing if a statute confers a great degree of discretion, i.e., power, over a narrow subject; it is quite another if that power can be brought to bear on something as immense as an entire economy." *Id.* at *26 (internal citations omitted).

In addition, the lack of any durational limit to Director Gordon's claimed power also tends toward rendering the statute an unconstitutional delegation of power. *Id.* at *27. Although the November 15 Order purports to regulate for 21 days, the Defendant has issued four orders under MCL 333.2253 since October 5, 2020 and certainly claims the power to issue subsequent orders. While a temporary delegation of power diminishes the likelihood and duration of any administrative abuse, as the Stay Home Orders devastatingly illustrate, the absence of any durational limit facilitates long-term executive abuse of legislative power. Thus, MCL 333.2253 is unconstitutional under the Non-Delegation Doctrine in Const 1963, art 3, § 2, which outright prohibits the exercise of the legislative power by the executive branch and thus bars the November 15 Order.

Even if the statute itself were a constitutional delegation of power – which it is not – Director Gordon has far exceeded the bounds of the statute, which only permits him to "prohibit" gatherings. *Wisconsin Legislature v. Palm* is instructive here. In *Wisconsin Legislature v. Palm,* the Wisconsin Supreme Court invalidated that state's stay-at-home order issued by the secretary-designee of the Wisconsin Department of Health Services, for exceeding statutory authority and failing to follow statutory procedures. 2020AP765-OA (Wis. May 13, 2020). Palm acted in violation of state law when she – unfettered by any procedural safeguards – issued the emergency order threatening criminal penalties for violations. Accordingly, the court invalidated her order.

Director Gordon similarly acted unilaterally, *absent any procedural safeguards*, and similarly does not have the authority under MCL 333.2253 to develop and promulgate a comprehensive regulatory scheme picking and choosing which businesses to shut down in the name of health and safety, thereby exercising control over Michigan's entire economy. Even by the text of the statute, Director Gordon may only "prohibit" gatherings and lacks authority to regulate them at all, let alone in an irrational way that favors some businesses and disfavors others.

Just as Governor Whitmer can't indefinitely rely on her emergency powers to justify executive lawmaking without reference to the Legislature, neither can she marshal MDHHS and Director Gordon to do the executive lawmaking for her. Director Gordon does not have authority to side-step the Legislature entirely and fully regulate via executive fiat. Plaintiffs are likely to succeed on the merits of Count V of their First Amended Complaint.

## B. The Plaintiffs Are Suffering Irreparable Harm

The Plaintiffs are and will continue to suffer immeasurable and irreparable harm if the November 15 Order is enforced against them. Irreparable harm is "the kind of injury for which

monetary damages are difficult to calculate." *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). Irreparable harm exists where a plaintiff's business is threatened with insolvency or its financial viability is threatened. *See Performance Unlimited, Inc. v. Questar Publishers Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995). Entity-destroying losses differ from mere damages and constitute irreparable harm. *See, e.g.*, *Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 125 (2d Circ. 1984). The Sixth Circuit has held that a moving party will suffer irreparable harm if it loses customers, goodwill, or future business. *See Mich. Bell Telephone Co. v. Engler*, 257 F.3d 587, 599 (6th Cir. 2001); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).

At the start of 2020 there were over 450,000 restaurant and food service jobs in Michigan representing 10% of the state's employment, but almost 250,000 of those employees had to be laid off or furloughed between March and May 2020. Many of these Michigan businesses have not survived. Approximately 2,000 restaurants have already closed their doors permanently in Michigan in 2020 and if the prohibition on indoor dining is prolonged, 6,000 more restaurants are likely to permanently close in the coming months.

Plaintiffs' businesses have already lost hundreds of millions of dollars in business opportunities as a result of the Governor's invalid Executive Orders and now are singled out from other non-essential businesses and suffering additional devastating losses under the November 15 Order. Plaintiffs are suffering and will continue to suffer irreparable injury from the additional losses of customers, goodwill, and future business.

### C. The Public Interest and the Balance of Equities Favor Preliminary Injunctive Relief

In addition to the extreme economic burdens the November 15 Order places on restaurants, and bars, closing restaurants for indoor dining right before the Thanksgiving holiday

will force many families to gather indoors in the unregulated residential environments that do not lend themselves to social distancing and which have been super spreader events. The remaining factors also weigh in favor of a preliminary injunction. First, as detailed above the balance of harms favors the Plaintiffs. These concerns dovetail with the general public interest. "[I]t is always in the public interest to prevent violation of a party's constitutional rights." *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

## IV.    CONCLUSION

Plaintiffs respectfully request this Court to enter a temporary restraining order and a preliminary injunction enjoining the Defendant from enforcing the November 15 Order prohibiting indoor dining at Plaintiffs' businesses.

Respectfully submitted,

Dated: November 18, 2020

 /s/ Kenneth T. Brooks
Kenneth T. Brooks (P33834)
Peter B. Ruddell (P63253)
Kelli M. Mulder (P84441) (*admission pending*)
Honigman LLP
Attorneys for Plaintiffs
222 N. Washington Sq., Suite 400
Lansing, MI  48933
(517) 377-0735; kbrooks@honigman.com

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of W.D. Mich. LCivR 7.3(b)(i) because this brief contains 7,727 words, excluding the parts of the brief exempted by W.D. Mich. LCivR 7.3(b)(i).

2.      This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 for Windows in 12-point Times New Roman font.

Respectfully submitted,

Dated: November 18, 2020          */s/ Kenneth T. Brooks*

Kenneth T. Brooks (P33834)
Peter B. Ruddell (P63253)
Kelli M. Mulder (P84441) (*admission pending*)
Honigman LLP
Attorneys for Plaintiffs
222 Washington Sq., Suite 400
Lansing, MI  48933
(517) 377-0735; kbrooks@honigman.com

**PROOF OF SERVICE**

I hereby certify that on November 18, 2020, I filed the above Brief, along with the Motion for Temporary Restraining Order and Preliminary Injunction with the Clerk of the Court for through the ECF system, and emailed copies of same to Matthew Rick (DHHS) at RickM@michigan.gov, Denise McMcCrimmon (DHHS) at McCrimmonD@michigan.gov, and James Long (AG) at LongJ@michigan.gov.

_/s/ Peter Ruddell_____

36978138.4