UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN RESTAURANT & LODGING )
ASSOCIATION, *et al.*, )
    Plaintiffs, )
              ) No. 1:20-cv-1104
-v- )
               ) Honorable Paul L. Maloney
ROBERT GORDON, )
    Defendant. )
               )

## OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER

On November 15, 2020, Robert Gordon, in his capacity as the director of the Michigan Department of Health and Human Services, issued an emergency order closing Michigan bars and restaurants for indoor, in-person services for three weeks.[1] The order became effective on Wednesday, November 18.[2]

Plaintiffs seek a temporary restraining order enjoining enforcement of the November 15 Emergency Order ("EO"). (ECF No. 10.) Plaintiffs filed an amended verified complaint (ECF No. 9) alleging five claims or counts. Plaintiffs allege the EO violates (1) the Interstate Commerce Clause; (2) procedural due process; (3) the Equal Protection Clause; (4) the

---

[1] The Emergency Order imposes "gathering restrictions" on "particular types of facilities." Only certain "food service establishments" are permitted to hold indoor gatherings. Functionally, bars and restaurant cannot offer indoor dining services.

[2] Plaintiffs includes a copy of the Emergency Order with their complaint (ECF No. 1 PageID.21-28) and with their amended complaint (ECF No. 9 PageID.57-64). Both pleadings present the Emergency Order as Exhibit 1. For both docket entries, the Emergency Order is not separately filed as a stand-alone document. When necessary to cite to the Emergency Order ("EO"), the Court will identify the PageID for the exhibit attached to the initial complaint.

Takings Clause of the United States and the Michigan Constitutions; and (5) the separation of powers and non-delegation clauses of the Michigan Constitution.

The Court will deny the request for *ex parte* emergency injunction.

## I.

Courts must carefully scrutinize requests for temporary restraining orders and strictly enforce the stringent requirements imposed by Rule 65(b) because "our entire jurisprudence runs counter to the notion of court action before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 7 of Almeda Cty.*, 415 U.S. 423, 439 (1974). The decision to grant or to deny a temporary restraining order falls within the discretion of a district court. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). The court must consider each of four factors: (1) whether the moving party demonstrates a strong likelihood of success on the merits; (2) whether the moving party would suffer irreparable injury without the order; (3) whether the order would cause substantial harm to others; and (4) whether the public interest would be served by the order. *Ohio Republican Party*, 543 F.3d at 361 (quoting *Northeast Ohio Coal. for Homeless & Serv. Emps. Int'l Union*, 467 F.3d 999, 1009 (2006)). When a court considers the four factors as part of a constitutional challenge, "'the likelihood of success on the merits often will be the determinative factor.'" *Thompson v. DeWine*, —F.3d—, 2020 WL 5742621, at *2 (6th Cir. Sept. 16, 2020) (quoting *Obama for America v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)).

## II.

Gordon issued the November 15 EO using the authority delegated to his office by the Michigan Legislature in Michigan's Public Health Code. (EO PageID.21-22.) Courts routinely apply the same constitutional standards of review to which the acts of a legislature are subjected to orders issued by the executive branch through delegated powers.[3] *See, e.g., Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 614 (6th Cir. 2020). The individual rights asserted by the plaintiffs in these challenges determine the level of scrutiny a court must apply. The Sixth Circuit summarized the situation.

> In addressing the COVID-19 outbreak, executives at the national, state, and local levels have had difficult decisions to make in honoring public health concerns while respecting individual liberties. Those decisions have now been the subject of numerous legal challenges, from coast to coast. Some involve individual rights for which precedent requires courts to apply a heightened level of scrutiny to government actions, for example, the free exercise of religion, or access to abortion. But many others involve executive actions that, by precedent, are viewed only through the lens of a very modest, or "rational basis," standard of review.

*League of Independent Fitness Facilities & Trainers, Inc. v. Whitmer*, 814 F. App'x 125, 126 (6th Cir. 2020) (*LIFFT*) (internal citations omitted).

In *LIFFT*, the Sixth Circuit applied the lowest level of constitutional scrutiny, reversing this Court's decision to grant a preliminary injunction. Under rational basis, the court assumes the executive's order is constitutional and the plaintiff must "negate 'every conceivable basis which might support it.'" *Id.* at 128 (quoting *Armour v. City of*

---

[3] Plaintiffs assert that the constitutional review standards for legislation do not necessarily apply to acts of the executive. (ECF No. 10 Pl. Br. at 14-15 PageID.87-88.) Plaintiffs do not, however, identify what alternate test should be applied. And, Plaintiffs' authority does not distinguish between acts of the legislature and executive acts. Because this Court is bound to follow Sixth Circuit authority, and because the Sixth Circuit has reviewed COVID-related executive orders under the same constitutional tests used for reviewing legislative acts, the Court will use those same constitutional tests to review the disputed EO.

*Indianapolis*, 566 U.S. 673, 681 (2012)). This standard of review constitutes the "paradigm of judicial restraint" and so long as "there are 'plausible reasons'" for the order, the court's "'inquiry is at an end.'" *FCC v. Beach Comm'ns, Inc.*, 508 U.S. 307, 313-14 (1993). Applying this standard of review, a court does not even consider the stated justification for the order; the executive's order "is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *LIFFT*, 814 F. App'x at 218 (quoting *Beach Comm'ns*, 508 U.S. at 315).

With this background, the Court considers Plaintiffs' asserted constitutional violations. For this motion, Plaintiffs assert a likelihood of success on the merits for four of their five claims. Plaintiffs do not assert their claims under the takings clauses as a basis for the temporary restraining order. (ECF No. 10 Pl. Br. at 20 n.9.)

A. Interstate Commerce

Our Constitution expressly grants Congress the power to regulate commerce between the States. U.S. Const. Art. I, § 8, cl. 3. The Supreme Court has held that the clause contains a "negative command," which has become known as the dormant Commerce Clause. *American Trucking Assns., Inc. v. Michigan Pub. Serv. Comm'n*, 545 U.S. 429, 433 (2005). The "negative command prevents a State from 'jeopardizing the welfare of the Nation as a whole' by 'placing burdens on the flow of commerce across its borders that commerce wholly within those borders would not bear.'" *Id.* (quoting *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995)). For any challenge brought under the dormant Commerce Clause, courts must determine whether the challenged act treats in-state and out-of-state economic interests differently such that the act "benefits the former and burden the

latter." *Oregon Waste Sys., Inc. v. Dept. of Environ. Quality of State of Oregon*, 511 U.S. 93, 99 (1994); *see Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 646 (6th Cir. 2010) (explaining that a state regulation is *per se* invalid under the dormant Commerce Clause if it is either extraterritorial or discriminatory in effect). State acts that do not discriminate against businesses beyond the border and "have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). The Sixth Circuit describes the *Pike* balancing test as "deferential." *Tennessee Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 450 (6th Cir. 2009); *Boggs*, 622 F.3d at 650 ("Because there is a rational basis to belief that the Rule's benefit outweighs any burden that imposes, the Rule is constitutional under *Pike*.").

The November 15 EO does not burden out-of-state economic interests in violation of the dormant Commerce Clause. First, the EO temporarily restricts indoor dining at restaurants and bars operating in Michigan, it does not close restaurants and bars beyond Michigan's borders. *See Antietam Battlefield KOA v. Hogan*, 461 F. Supp. 3d 214, 239 (D. Md. 2020) ("The Governor's order is not facially discriminatory against interstate commerce, as it only orders the closure of certain Maryland businesses, and does not regulate out-of-state businesses."). Second, the EO does not distinguish between business entities registered in Michigan and business entities registered in another State. If the restaurant or bar operates in Michigan, it must temporarily cease indoor service. Third, while closing indoor dining services in Michigan might have an effect on the interstate food service supply industry, that

effect applies equally to in-state and out-of-state suppliers. *See id.* If the Michigan restaurant is closed, it does not purchase goods from either in-state or out-of-state suppliers.

The incidental burden on interstate commerce resulting from the three-week closure is not excessive in relation to the local benefits. This second inquiry is a closer issue and the Court is mindful that the balancing inquiry must be deferential to the State's decision. The current COVID-19 trends are outlined in the EO as justifications for invoking the delegated authority. Plaintiffs summarize the possible economic consequences for Michigan businesses. But, Plaintiffs' allegations concerning the burden on commerce lacks the necessary precision. The November EO expires in three weeks. Plaintiffs attempt to predict the economic consequences of this EO by pointing to the economic consequences of the earlier state-wide shut down followed by the months long ban on indoor dining. Today, the comparison is not persuasive. On this present record including a December 8 termination date, Plaintiffs have not demonstrated that the EO's burden on interstate commerce is excessive when balanced against the purported in-state benefits. To be clear, at this point in the litigation, the Court does not conclude that Plaintiffs cannot establish a claim using this rationale. The Court simply concludes that Plaintiffs have not met its burden for *ex parte* emergency injunctive relief.

### B. Procedural Due Process

Ordinarily, due process requires that a party whose rights will be affected be provided with notice and an opportunity to be heard. *See Fuentes v. Shevin*, 407 U.S. 67, 80 (1972); *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016) ("At its core, procedural due process requires notice and an opportunity to be heard at a meaningful

time and in a meaningful manner.") (quotation marks and citation omitted). Our Supreme Court, however, recognizes that the due process requirements may be suspended in emergency situations. *See Hodel v. Virginia Surface Mining and Reclamation Assn., Inc.*, 452 U.S. 264, 299-30 (1981) (collecting cases).

> Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is one of the oldest examples of permissible summary action. Moreover, the administrative action provided through immediate cessation orders responds to situations in which swift action is necessary to protect the public health and safety.

*Id.* at 300-01 (cleaned up). ). Multiple district courts have cited this portion of *Hodel* to deny preliminary injunction challenges to COVID-19 related procedural due process claims. *See, e.g., Page v. Cumo*, —F. Supp. 3d—, 2020 WL 458329, at *12 (N.D.N.Y Aug. 11, 2020); *Savage v. Mills*, F. Supp. 3d, 2020 WL 4572314, at *7 (D. Maine Aug. 7, 2020) ( *Carmichael v. Ige*, —F. Supp. 3d—, 2020 WL 3630738, at * (D. Haw. July 2, 2020) (14 day travel quarantine); *World Gym, Inc. v. Baker*, —F. Supp. 3d—, 2020 WL 4274557, at *4 (D. Mass. July 24, 2020) (shut down order); *Benner v. Wolf*, 461 F. Supp. 3d 154, 162 (M.D. Pa. 2020); *910 E. Main LLC v. Edwards*, —F. Supp. 3d—, 2020 WL 4929256, at *10 (W.D. La. Aug. 21, 2020).

Plaintiffs have not demonstrated a likelihood of success on the merits for their procedural due process claim. In their brief, Plaintiffs do not address the holding in *Hodel*. Plaintiffs do challenge the effectiveness of the EO as addressing the emergency situation, arguing that restaurants and bars are not the source of COVID spread and can be operated in a safe manner. Plaintiffs, however, have not identified any authority demonstrating that

the effectiveness of the administrative action should be considered for the purpose of a procedural due process claim. To the extent that Court can consider the evidence and argument, the Court would be balancing interests in a manner akin to what occurs for a rational basis test.

### C. Equal Protection

Our Constitution generally prohibits States from denying persons the "equal protection of the laws." U.S. Const. Amend XIV, § 1, cl. 4. Generally, equal protection requires that all persons similarly situated should be treated alike. *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). For equal protection challenges, a court must first "identify with some precision the scope of the constitutional right at issue." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 365 (2001). When challenged under the Equal Protection Clause, courts review economic regulations by applying the rational basis test. *City of Cleburne*, 473 U.S. at 440; *Maxwell's Pic-Pac, Inc. v. Dehner*, 739 F.3d 936, 940 (6th Cir. 2014) (reviewing a statute that prohibited liquor licenses for retailers who have at least 10% of their gross monthly sales from groceries or gasoline).

Plaintiffs insist that the EO cannot rationally distinguish between indoor dining services, which are prohibited, and the retail and service establishments that remain open. Plaintiffs note that gyms remain open. So do liquor stores, recreational marijuana dispensaries, tattoo parlors, and nail salons.

Plaintiffs have not negated every conceivable basis for the different treatment in the EO. Individuals who patronize the businesses that remain open can do so—and must do so—while wearing a face covering. Even those individuals exercising indoors at a gym must wear

a face covering (group exercise classes are prohibited). In contrast, individuals cannot eat or drink while wearing a mask. Indeed, one of the exceptions for face coverings contained in the EO is for eating and drinking (EO § 8(c) PageID.26), which might occur at one of the limited food service establishments that remain open (*id.* ¶ 3(b)). Under the deferential standard that the Court must apply, Plaintiffs have not demonstrated a likelihood of success on the merits. Restaurants and bars are not similarly situated to the business that are allowed to remain open.

### D. State Law

On October 2, 2020, the Michigan Supreme Court concluded that Governor Gretchen Whitmer's COVID-inspired executive orders, at least those issued after April 30, 2020, lacked a legal basis. *In re Certified Questions from the United States District Court*, —N.W.2d—, 2020 WL 5877599 (Mich. Oct. 2, 2020). The Court held that Michigan's Emergency Power of the Governor Act (EPGA) violated the separation-of-powers principle of the Michigan Constitution. *Id.* at *12. Specifically, the delegation of power in the EPGA (1) was too broad in scope, *id.* at *15; (2) omitted any durational limits, *id.* at *16; and (3) lacked sufficient standards, *id.* at *16-*18. Justice Viviano wrote an opinion concurring in part and dissenting in part. *Id.* at *24-*39. Important here, Justice Viviano noted the provisions of Michigan's Public Health Code that address public health issues generally and more specifically communicable diseases and epidemics. *Id.* at *29-*30.

The Court declines to issue a temporary restraining order on the basis that Michigan Compiled Laws § 333.2253 violates the separation of powers and non-delegation provisions of the Michigan Constitution. It would be extraordinary for a federal judge to find a state

statute unconstitutional on state-law grounds without the benefit of hearing from the State itself. While the Court may have concerns about the statute, the Court can infer from Justice Viviano's concurrence that the Michigan's Public Health Code does provides some legal basis for executive action in response to COVID-19. And, there is at least one important difference—breadth of scope—between the EPGA, which the Michigan Supreme Court struck down, and § 333.2253. In the EPGA, the Governor could exercise the delegated authority "during times of great public crisis . . . when public safety is imperiled" by "proclaim[ing] a state of emergency." Mich. Comp. Laws § 10.31(1). Section § 333.2253(1) applies in more narrow situations. The Legislature delegated authority only when the "director determines that control of an epidemic is necessary to protect public health[.]" Mich. Comp. Laws § 333.2253(1). The Court is aware that § 333.2253 and Director Gordon's emergency orders have already been challenged in the state courts. *See, e.g., Semlow Peak Performance Chiropractic v. Whitmer*, No. 20-206-MZ (Mich. Ct. Claims). Perhaps, that litigation will ultimately result in definitive state appellate court guidance on this important separation of powers issue in Michigan.

### III.

For their federal constitutional claims, Plaintiffs have not established a likelihood of success on the merits. Applying rational basis review, Plaintiffs have not negated every conceivable basis for the November 15 Emergency Order. And, as presented in this motion, Plaintiffs' claims do not require any more stringent standard of review. Because the Court must assume the EO is constitutional, the balance of the factors weigh against *ex parte* injunctive relief.

For Plaintiffs' separation of powers state-law claim, the Court declines to grant a temporary restraining order. The State has not appeared in this action and has not been afforded an opportunity to defend the statute or the EO. The Public Health Code provision used to issue the EO is more narrow in scope than the statute struck down by the Michigan Supreme Court. That difference constitutes a sufficient basis for this Court to decline the emergency relief sought by Plaintiffs.

## ORDER

Consistent with this Opinion, the Court **DENIES** Plaintiffs' motion for a temporary restraining order. (ECF No. 10.) **IT IS SO ORDERED.**

Date: November 20, 2020                    /s/ Paul L. Maloney
                                           Paul L. Maloney
                                           United States District Judge